Filed 7/17/24  P. v. Johnson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROMEL DAVON JOHNSON,<br><br>    Defendant and Appellant. | B326616<br><br>(Los Angeles County<br>Super. Ct. No. BA227886) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis Rappe, Judge.  Reversed with directions.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy

Attorney General, and Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In 2005 a jury convicted Romel Johnson of, among other crimes, first degree murder and conspiracy to commit murder. In 2019 Johnson filed a petition for resentencing under Penal Code former section 1170.95[1] (now section 1172.6), alleging that he was convicted of murder under the natural and probable consequences doctrine and that he could not be convicted of murder under current law. The superior court found Johnson failed to state a prima facie case for relief and denied the petition without issuing an order to show cause. Because the record of conviction does not preclude Johnson from showing he could not presently be convicted of murder, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Johnson's Accomplice Kills Two Men*

In April 2000 Kevin Moguel, a member of the Rollin 20s Blood criminal street gang, was shot and killed. Police suspected the assailants were members of the rival Rollin 30s Crips gang. Two days later, Johnson and Marquis Rangel, both members of the Rollin 20s Blood gang, went to an area claimed by the Rollin 30s Crips gang. Johnson drove a car he borrowed from his girlfriend and parked near the intersection of Browning Boulevard and Budlong Avenue. Rangel got out and walked

_____

[1]     Statutory references are to the Penal Code.

2

around a corner. Within minutes, Johnson heard gunshots. Rangel ran back to the car, jumped in, and told Johnson to drive away. According to Johnson, Rangel said he had seen some Rollin 30s Crips gang members and shot them "'for Kev.'" Paramedics later found Omar Jemile Reed and Jermaine Fields bleeding from fatal gunshot wounds. (*People v. Johnson* (May 21, 2007, B186191) [nonpub. opn.] (*Johnson I*).)

Police interviewed Johnson about the so-called "Browning Boulevard Crimes," which are the subject of this appeal. Johnson admitted he drove Rangel to the location of the shooting, but he denied he knew before the shooting Rangel had a gun or planned to shoot anyone. Johnson said that he could not see the shooting from where he parked and that he did not have a gun with him. During questioning, police also asked Johnson about an unrelated robbery that led to the deaths of two other people (the "Milton's Restaurant Crimes"). (*Johnson I, supra*, B186191.)

### B. *A Jury Convicts Johnson of First Degree Murder and Conspiracy To Commit Murder, and We Affirm*

The People charged Johnson and five codefendants in a 65-count indictment alleging crimes from both the Browning Boulevard Crimes and the Milton's Restaurant Crimes. Johnson was tried separately, and the trial court renumbered the seven counts against Johnson for the jury. Based on that numbering, counts 1 through 4 concerned the Milton's Restaurant Crimes and charged Johnson with felony murder (§ 187, subd. (a); counts 1 and 2), second degree robbery (§ 211; count 3), and second degree commercial robbery (§ 459; count 4). The People also alleged various firearms and gang enhancements in connection with counts 1 through 4.

Regarding the Browning Boulevard Crimes, the People charged Johnson with two counts of first degree murder (§ 187, subd. (a); counts 5 and 6) and one count of conspiracy to commit murder (§ 182, subd. (a)(1); count 7). The People alleged six overt acts for the purpose of carrying out the objectives and purposes of the conspiracy. For counts 5, 6, and 7, the People alleged a principal personally and intentionally discharged a firearm proximately causing great bodily injury and death, within the meaning of section 12022.53, subdivisions (d) and (e)(1); a principal personally and intentionally discharged a firearm, within the meaning of section 12022.53, subdivisions (c) and (e)(1); and a principal personally used a firearm, within the meaning of section 12022.53, subdivisions (b) and (e). The People also alleged Johnson committed the crimes in counts 5, 6, and 7 for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1).

The jury convicted Johnson on all counts and found true the firearm allegations, gang allegations, and all six alleged overt acts. The jury also found true the allegation Johnson was guilty of multiple crimes of murder, within the meaning of section 190.2, subdivision (a)(3). On count 5 the trial court sentenced Johnson to life without the possibility of parole, and on count 6 the court sentenced Johnson to a consecutive term of 25 years to life. The court stayed imposition of sentence on count 7 under section 654. On counts 5 and 6 the court sentenced Johnson to consecutive terms of 25 years to life on each of the firearm enhancements under section 12022.53, subdivisions (d) and (e). The court did not impose any sentence for the gang

4

finding under section 186.22, subdivision (b)(1), and it stayed the sentence under section 12022.53, subdivisions (b), (c), and (e), on all counts. We affirmed the judgment. (*Johnson I*, *supra*, B186191.)

C. *Johnson Files a Petition for Resentencing; The Superior Court Issues an Order To Show Cause for Counts 1 and 2, but Not for Counts 5 and 6*

In 2019 Johnson filed a petition for resentencing under former section 1170.95, now section 1172.6. Johnson alleged that he was convicted of first degree murder (without specifying any counts) and cannot now be convicted of first degree murder because of changes to sections 188 and 189 effective January 1, 2019;[2] that he was not the actual killer; that he did not intend to kill, or to aid, abet, counsel, command, induce, solicit, request, or assist the actual killer; and that he was not a major participant in an underlying felony who acted with reckless indifference to human life. The superior court appointed counsel for Johnson, and on April 1, 2022 the court issued an order to show cause for counts 1 and 2, but not for counts 5 and 6 because Johnson was convicted of conspiracy to commit murder in a related count (i.e., count 7).

The People stipulated the court could resentence Johnson on counts 1 and 2, and the People and Johnson entered into a resentencing agreement. Pursuant to that agreement, the superior court vacated Johnson's convictions for felony murder and associated allegations in counts 1 and 2 and redesignated

---

[2] In an apparent typographical error, Johnson's petition referred to "changes to §§189 or 189" instead of sections 188 and 189.

5

count 1 as a violation of section 211 (second degree robbery) and count 2 as a violation of sections 664 and 211 (attempted second degree robbery), and Johnson pleaded no contest to those charges. On October 21, 2022 the superior court resentenced him on counts 1 and 2 to an aggregate prison term of three years eight months. Johnson timely appealed from the order denying his request for an order to show cause on counts 5 and 6.

## DISCUSSION

A. *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder and eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder. (*People v. Curiel* (2023) 15 Cal.5th 433, 462 (*Curiel*); see *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule. (See *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Gentile*, at pp. 842-843.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the legislative changes to the definitions of the crime. (See *Curiel*, *supra*, 15 Cal.5th at pp. 450, 462-463; *People v. Strong* (2022) 13 Cal.5th 698, 708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.) If a section 1172.6 petition contains all the required information,

6

the court must appoint counsel to represent the petitioner if requested.  (See § 1172.6, subd. (b)(3); *Lewis*, at pp. 962-963.)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'"'"  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel, supra*, 15 Cal.5th at pp. 463-464.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971; see *Curiel*, at p. 460; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Lewis*, at p. 972; see *People v. Estrada* (2024) 101 Cal.App.5th 328, 337; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)  But "[i]f the record of conviction "'"contain[s] facts refuting the allegations made in the petition,"'"' the "trial court is justified in rejecting them."  (*Eynon*, at p. 975; see *Lewis*, at p. 971; *People v. Allen* (2023) 97 Cal.App.5th 389, 395.)  We review de novo an order denying a petition under section 1172.6 without issuing an order to show cause.  (*Estrada*, at p. 337; *Williams*, at p. 1251.)

B.   *The Record of Conviction Does Not Refute Johnson's Allegation He Cannot Now Be Convicted of Murder*

Johnson argues the superior court erred in failing to issue an order to show cause for counts 5 and 6 because, according to Johnson, his conviction on count 7 for conspiracy to commit murder did not require the jury to find he had an intent to kill. Johnson is correct.

1.   *Additional Procedural Background*

At trial the People proceeded against Johnson on counts 5 and 6 for first degree murder under a theory of aiding and abetting an assault with a firearm (§ 245, subd. (a)(2)), the natural and probable consequence of which was murder.  The court instructed the jury with CALJIC No. 3.02 that "one who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted."  The court told the jury, "In determining whether a consequence is 'natural and probable,' you must apply an objective test based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur."

On count 7 for conspiracy to commit murder, the court instructed the jury with CALJIC No. 6.10, but the court omitted the italicized part of the pattern instruction in brackets:  "As relates to count 7, a conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the crime of murder [*and with the further specific intent to commit such offense*], followed by an overt act committed in this state by one or more of the parties for the purpose of

8

accomplishing the object of the agreement. Conspiracy is a crime. In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement and specific intent to commit murder, there must be proof of the commission of at least one of the acts alleged in the information to be an overt act and that the act found to have been committed was an overt act. . . ." (See *People v. O'Malley* (2016) 62 Cal.4th 944, 987.)

During closing argument, the prosecutor told the jury the "theories of liability" on counts 5 and 6 were "either aiding and abetting or conspiracy." The prosecutor told the jurors that, in determining whether Johnson committed the murders in the first or second degree, "you look [at] the mental state of Marquise Rangel" and whether he acted "in a willful, deliberate and premeditated manner to get you to first degree, or did he act with the intent to kill but not sufficient premeditation and deliberation which will put you at second degree." Regarding the conspiracy to commit murder charge in count 7, the prosecutor stated: "The definition, was there an agreement with the intent to agree. It would be by at least one overt act committed for the purpose of accomplishing the object of the agreement. That still seems complicated. Okay. Basically, what it means is, did more than one person agree to commit . . . the crime of murder. Did Marquise Rangel and defendant agree they will get in that car, drive in enemy territory, look for some people that seem to be Crips and kill them."

The prosecutor then read the instruction defining an "overt act" for purposes of conspiracy to commit murder, but discussed that definition in the context of both the Milton's Restaurant Crimes and the Browning Boulevard Crimes. He stated, "When [the two defendants] went out to get guns the night before [the

9

Milton's Restaurant Crimes], there is an overt act.  All conspirators are now in for it.  Any natural and probable consequences thereafter, everyone is guilty for it. . . .  The same analysis applies to the murder of Mr. Fields and Mr. Reed when the defendant got, borrowed that green car from his girlfriend, . . . that is an overt act."

The prosecutor continued mixing the theories of liability under the felony murder counts from counts 1 and 2 with those underlying counts 5 and 6, as well as the theories of aiding and abetting and conspiracy to commit murder.  He said: "Joint responsibility.  Natural and probable consequences.  Now, within the body of aiding and abetting and conspiracy we are talking about now, it requires that the killing have been either . . . a number of persons conspire together to commit the crime of robbery or burglary, and it also relates to the crime of murder.  And if the life of another person is taken by one or more of them in the perpetration of, or attempt to commit that crime, and if the killing is done in furtherance of common design—which with regard to [the Browning Boulevard Crimes] the common design was to kill and [with regard to the Milton's Restaurant Crimes] it was to commit robbery or burglary—or is the natural and probable consequence of the pursuit of that purpose, all of the co-conspirators are equally guilty whether intentional, unintentional, or accidental."  The prosecutor read the definition of natural and probable consequences and argued murder was an expected consequence in the Milton's Restaurant Crimes.  He then addressed conspiracy to commit murder again: "So you break this down and look at all facts of the case as to what was natural and probable, and I think it will speak for itself.  That is

conspiracy, an agreement, overt act, murder, death if I may, which was natural and probable, aiding and abetting."

### 2. *The Jury Did Not Find Johnson Harbored an Intent To Kill*

The People argue, and the superior court ruled, Johnson is not eligible for resentencing under section 1172.6 because the jury necessarily found, in convicting him of conspiracy to commit murder, he intended to kill Reed and Fields. In general, "'[c]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy.'" (*People v. Whitson* (2022) 79 Cal.App.5th 22, 31-32 (*Whitson*); see *People v. Swain* (1996) 12 Cal.4th 593, 602.) A "conviction of conspiracy to commit murder requires a finding of intent to kill, and cannot be based on a theory of implied malice." (*Swain*, at p. 607; see *People v. Medrano* (2021) 68 Cal.App.5th 177, 179, 183 (*Medrano I*).) Thus, where murder is the object of a conspiracy and a jury necessarily finds a defendant intended to kill in connection with a conviction for conspiracy to commit murder, that defendant is not eligible for relief under section 1172.6. (*Medrano I*, at pp. 179, 182-183; see *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 863, 866 [defendant was ineligible for relief under section 1172.6 where her conviction for conspiracy to commit murder was necessarily based on a jury finding she personally harbored an intent to kill]; *People v. Allen, supra,* 97 Cal.App.5th at p. 397 [defendant was ineligible for relief under section 1172.6 because "to find that [the defendant] conspired to

commit murder required jurors to find that he harbored the intent to kill"].)[3]

In *Medrano I* the trial court instructed the jury with a version of CALJIC No. 6.10 that included the portion of the instruction the trial court in Johnson's trial omitted. (*Medrano I*, *supra*, 68 Cal.App.5th at p. 184.) Thus, the jury in *Medrano I* convicted the defendant of conspiracy to commit first degree murder only after finding he acted "'with the specific intent to agree to commit the public offense of first degree murder *and with the further specific intent to commit such offense.*'" (*Ibid.*, italics added again.) "In view of this instruction," the court in *Medrano I* stated, "the conspiracy conviction shows that the jury found appellant had specifically intended to commit first degree murder." (*Ibid.*)

The jury in Johnson's trial did not make the same finding because the trial court did not instruct the jurors that, to convict Johnson of conspiracy to commit murder, they had to find he acted with the specific intent to commit murder. The trial court

---

[3]   Johnson cites *People v. Curiel*, *supra*, 15 Cal.5th 433 for the proposition a jury finding of intent to kill in connection with a conviction for conspiracy to commit murder does not conclusively establish a defendant is ineligible for relief. The People argue *Curiel* is distinguishable and did not affect the court's holdings in *Medrano I* and cases following it because the defendant in *Curiel* was not convicted of conspiracy to commit murder. (See *Curiel*, at p. 440; *People v. Medrano* (2024) 98 Cal.App.5th 1254, 1267 (*Medrano II*) [distinguishing *Curiel* and holding the defendant was ineligible for relief under section 1172.6 because, "[u]nlike Curiel, appellant was convicted of conspiracy to commit first degree murder"].) Because we conclude the jury in this case did not find Johnson had the intent to kill, we do not address Johnson's argument *Medrano II* was wrongly decided.

in *Whitson, supra*, 79 Cal.App.5th 22 made the same error the court made here. (*Id.* at p. 32 & fn. 7.) The court in *Whitson* reversed the superior court's summary denial of the defendant's petition under section 1172.6 because the conviction for conspiracy to commit murder did not include the finding by the the jury that defendant intended to kill. The court in *Whitson* stated: "Had the jury been fully instructed with respect to conspiracy to murder, including the portion of the form instruction deleted, its guilty verdict would have encompassed the finding that [the defendant] intended to kill." (*Whitson,* at p. 32.) For the same reason, Johnson's conviction for conspiracy to commit murder did not require the jury to find Johnson had intent to kill Fields and Reed.

The People argue *Whitson* is distinguishable because the trial court here instructed the jury with CALJIC No. 6.10 that, "in addition to proof of the unlawful agreement *and specific intent to commit murder*, there must be proof of the commission of at least one of the acts alleged in the information to be an overt act . . . ."[4] (Italics added.) This instruction, however, did not tell the jurors that, to find Johnson guilty of conspiracy to commit murder, they had to find Johnson intended to commit murder or to kill. The instruction based on CALJIC No 6.10 assumed the jury already made that finding.

And the prosecutor's closing argument made it even less likely the jurors inferred from the incomplete instruction that, to find Johnson guilty of conspiracy to commit murder, they had to find he intended to commit murder. Like the trial court, the

---

[4] It is unclear whether the trial court in *Whitson* provided this part of the pattern instruction. (See *Whitson, supra,* 79 Cal.App.5th at p. 32, fn. 7.)

13

prosecutor never told the jurors that they had to make that finding; he said they needed to find only that Johnson had the "intent to agree . . . to commit the crime" of murder. And the prosecutor never argued Johnson had an intent to kill. In explaining the concept of an overt act, the prosecutor stated that "any natural and probable consequence" flowing from an overt act makes "everyone . . . guilty for it" and that, in connection with the Browning Boulevard Crimes, "driving over to the crime scene" was an overt act. In contrast, the prosecutor in *Medrano I* told the jury, "'I'll be arguing to you that [the defendant] clearly did harbor the intent to kill . . . .'" (*Medrano I*, *supra*, 68 Cal.App.5th at p. 183.) The prosecutor's closing argument here also entangled (or mangled) the elements of first degree murder based on natural and probable consequences and conspiracy to commit murder in such a way that a reasonable juror may have believed Johnson could be convicted for conspiracy to commit murder based solely on his intent to agree to commit murder, with or without the specific intent to commit that crime. (See *Whitson*, *supra*, 79 Cal.App.5th at p. 33 ["Absent an express finding by the jury of intent to commit murder, [the defendant] is not barred from relief on that basis as a matter of law."].)

## DISPOSITION

The order is reversed.  The superior court is directed to issue an order to show cause and conduct an evidentiary hearing under section 1172.6, subdivision (d).

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.

15